UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| R. J. ZAYED, as Court-Appointed Receiver, | ) ) ) | CIVIL ACTION |
| | ) | File No.: 13-cv-00232 (DSD-JSM) |
| Plaintiff, | ) | |
| v. | ) ) | |
| ASSOCIATED BANK, N.A., | ) ) | |
| Defendant. | ) | |

**STAR TRIBUNE'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO INTERVENE AND TO UNSEAL DOCUMENTS**

Plaintiff/Receiver R.J. Zayed has moved to de-designate certain documents and to unseal the Complaint filed in this action. Pursuant to Federal Rule of Civil Procedure 24(b), the *Star Tribune* seeks to intervene in the action for the limited purpose of joining in and supporting that request. The *Star Tribune* is the largest newspaper and leading news organization in Minnesota, and has provided extensive coverage about the facts and circumstances giving rise to this action, which have generated substantial public interest. The current Stipulated Protective Order inhibits the ability of the *Star Tribune* to adequately report on this proceeding for the benefit of its readers and the broader public.

The *Star Tribune's* motion is based on established First Amendment and common law principles, which suggest that the *Star Tribune* should be permitted to intervene for the limited purpose of challenging the scope of the protective order, and that its motion to unseal should be granted to the extent that the defendant cannot affirmatively

1

demonstrate the existence of good cause to support the continued sealing of the documents that are at issue.

### I. The Factual Setting.

The *Star Tribune* adopts and incorporates by reference the summary of the factual background that appears in the Receiver's Memorandum of Law, along with the Receiver's description of the documents that are subject to the stipulated protective order that is currently in effect.

### II. The Star Tribune Should be Permitted to Intervene.

A motion brought under Fed. R. Civ. P. 24(b) has become the preferred method for considering challenges to restrictions on access to court records and proceedings brought by non-parties such as news organizations. *See, e.g., Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 778 (3d Cir. 1994) ("the procedural device of permissive intervention is appropriately used to enable a litigant who was not an original party to an action to challenge protective or confidentiality orders entered into that action"); *In re Baycol Prods. Litig.,* 214 F.R.D. 542 (D. Minn. 2003) ("Baycol I"); *Northern States Power Co. v. Westinghouse Elec., Corp.,* 156 F.R.D. 168 (D. Minn. 1994). "Although the Eighth Circuit has not yet issued a decision on this precise issue, the clear majority view allows the use of Rule 24(b) to challenge a confidentiality order." *Baycol I,* 214 F.R.D. at 543 (allowing to a newspaper to intervene to challenge such an order).

"Rule 24(b)(2) should be interpreted broadly to allow news media an effective mechanism to contest the scope or need for a confidentiality order." *Id.* at 544. See also *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 609 n.25 (1982) ("representatives

of the press and general 'public must be given an opportunity to be heard on the question of their exclusion'") (quoting *Gannett Co. v. DePasquale,* 443 U.S. 368, 401 (1979)); *Jessup v. Luther,* 227 F.3d 993, 997 (7th Cir. 2000) (holding that the right of the press to intervene to challenge the closure of courts in civil litigation "is rooted in the public's well-established right of access to public proceedings").

"The principal consideration for this Court in determining whether permissive intervention should be granted is whether such intervention will unduly delay or prejudice the adjudication of the parties' rights." *Baycol I,* 214 F.R.D. at 544 (citing *South Dakota ex rel. Barnett v. U.S. Dep't of Interior,* 317 F.3d 783, 787 (8th Cir. 2003)). Because the *Star Tribune* seeks to intervene only to assert its presumptive right of public access, and not to engage in the substance of the underlying litigation, its "intervention will [not] unduly delay or prejudice the adjudication of the parties' rights." *Baycol I,* 214 F.R.D. at 544. Thus pursuant to Rule 24(b), and in keeping with principles which the courts have derived from the Rule in these types of cases, the *Star Tribune* should be permitted to intervene.

### III.  There is a Presumptive Right of Public Access to the Sealed Documents.

The *Star Tribune* and other members of the public have a presumptive and long-recognized right of access to the documents that have been placed under seal by the protective order in this case.  That right has often been acknowledged by the courts as a key factor in fostering public knowledge about and public confidence in the legal system. "People in an open society do not demand infallibility from their institutions, but it is difficult to accept what they are prohibited from observing." *Richmond Newspapers,*

*Inc., v. Virginia*, 448 U.S. 555, 572 (1980). "[T]he open processes of justice serve an important prophylactic purpose, providing an outlet for community concern, hostility, and emotion." *Id.*, at 555. These "crucial prophylactic aspects of the administration of justice cannot function in the dark; no community catharsis can occur if justice is done in a corner [or] in any covert manner." *Id.* And, "in a society in which each individual has but limited time and resources with which to observe at first hand the operations of his government, he relies necessarily upon the press to bring to him in convenient form the facts of those operations. " *Cox Broadcasting Corp. v. Cohen*, 420 U.S. 469, 491–92 (1975). These considerations have special force in a case like this one, where the public's interest is particularly compelling given the economic and social consequences of Trevor Cook's actions.

The right of public access to court proceedings is based both on the First Amendment and the common law:

"It has long been recognized that the public has a First Amendment right of access to criminal proceedings, civil proceedings, and to 'receive information and ideas' pertaining to the conduct of public affairs." *Center for Nat'l Sec. Studies v. United States,* 215 F. Supp. 2d 94, 111-12 (D.D.C. 2002) (footnotes omitted) (quoting *Kleindienst v. Mandel,* 408 U.S. 753, 762 (1972)) *cert. denied sub nom., Center for Nat'l Sec. Studies v. DOJ,* 540 U.S. 1104 (2004); *Washington Post v. Robinson,* 935 F.2d 282, 287 (D.C. Cir. 1991) (holding that the First Amendment "guarantees the press and the public a general right of access to court proceedings and court documents unless there are compelling reasons demonstrating why it cannot be observed."). The presumptive right of access to

pretrial civil proceedings "derives from the core purpose of the First Amendment, which is to ensure 'freedom of communication on matters relating to the functioning of government.' " *Center for Nat'l Sec. Studies,* 215 F. Supp. 2d at 112 (quoting *Richmond Newspapers Inc. v. Virginia,* 448 U.S. 555, 575 (1980)).

In addition, "[t]here is a common-law right of access to judicial records." *In re Guidant Corp. Implantable Defibrillator Products Liability Litigation*, 254 F.R.D. 632, 636 (D. Minn. 2007) citing *Webster Groves Sch. Dist. v. Pulitzer Publ'g Co.,* 898 F.2d 1371, 1376 (8th Cir.1990). While "[t]he Eighth Circuit has held that this right of access 'is not absolute, but requires a weighing of competing interests,'" and that a "court has supervisory power over its own records, and the decision to seal a file is within the court's discretion," *id.*, public access is nonetheless presumed and cannot be prohibited without a factually based demonstration of necessity.

There certainly are instances where a litigant can overcome the presumptive right of access—for example, in cases where bona fide trade secrets might be disclosed. But it is black-letter law under both the First Amendment and common law standards that the party seeking to file materials under seal must first make a "'particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements' ... that the disclosure [of the information] will result in a 'clearly defined and very serious injury to its business.'" *United States v. Exxon Corp.,* 94 F.R.D. 250, 251 (D.D.C. 1981) (quoting 8 Wright & Miller, *Federal Practice & Procedure* § 2035, at 265 (1970) and *United States v. IBM,* 67 F.R.D. 40, 46 (S.D.N.Y. 1975)); *Leucadia, Inc. v. Applied Extrusion Techs., Inc.,* 998 F.2d 157, 165 (3d Cir. 1993) (holding that the party wishing

5

to file under seal bears the burden of showing some significant interest that outweighs the presumption of access); *Johnson v. Greater Southeast Community Hosp. Corp.,* 951 F.2d at 1268, 1278 (D.C. Cir. 1991) (holding that a party seeking to file records under seal must show "specific reasons why the record, or any part thereof, should remain under seal"). Thus in *Johnson,* the D.C. Circuit made clear that a party's general statement that sealing was required to keep its "processes out of the public eye" was insufficient to justify sealing court files in a civil case. *Johnson, supra,* 951 F.2d at 1277. Similarly, the Sixth Circuit has pointed out that "[s]imply showing that the information would harm the company's reputation is not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and records." *Brown & Williamson Tobacco Corp. v. FTC,* 710 F.2d 1165, 1179 (6th Cir. 1983).

Even if a party is ultimately able to identify the requisite good cause or (where the First Amendment standard applies) compelling reasons for secrecy, the relief provided must be narrowly tailored. "Should the court determine that some kind of sealing order is warranted, that order should be no broader than is necessary to protect those specific interests identified as in need of protection." *Johnson,* 951 F.2d at 1278. "Holding trade secrets in confidence is one thing, holding entire judicial proceedings in confidence is quite another." *PepsiCo, Inc. v. Redmond,* 46 F.3d 29, 31 (7th Cir. 1995).

The *Star Tribune* has not of course seen the documents that are currently under seal, and therefore cannot meaningfully offer specific arguments as to whether the information they contain would support continuing the ban on public access. But the Receiver is familiar with the documents, and his Memorandum of Law describes in detail

6

why it appears extremely unlikely —even applying the common law standard—that the requisite factual demonstration could be made to justify keeping any of the documents under seal. The *Star Tribune* adopts and incorporates these arguments of the Receiver.

Again, there is widespread and legitimate public interest in the circumstances out of which this action arises. Thus the case clearly emphasizes the value of public access to the court system, and the importance of permitting no greater degree of confidentiality than can clearly and empirically be justified.

### IV. Conclusion

For the foregoing reasons, the *Star Tribune* respectfully requests that its motion to intervene in this action be granted, and that the Court modify the protective order so that it applies only to those documents for which defendant has made the requisite demonstration that confidentiality is necessary.

DATED: February 22, 2013

                                                                                         _____
                                                                                          Mark R. Anfinson (#2744)
                                                                                          Attorney for *Star Tribune*
                                                                                          Lake Calhoun Professional Building
                                                                                          3109 Hennepin Avenue South
                                                                                          Minneapolis, Minnesota 55408
                                                                                          (612) 827-5611