```
                      UNITED STATES DISTRICT COURT
                         DISTRICT OF MINNESOTA
                       Civil No. 13-232(DSD/JSM)
```

R.J. Zayed, in His Capacity
As Court-Appointed Receiver
For The Oxford Global Partners,
LLC, Universal Brokerage FX,
and Other Receiver Entities,

       Plaintiff,

v.                                                           **ORDER**

Associated Bank, N.A.,

       Defendant.

Brent Elswick, Esq., Brian W. Hayes, Esq., Russell J. Rigby, Esq., Tara C. Norgard, Esq. and Carlson, Caspers, Vandenburgh, Lindquist & Schuman, PA, 225 South Sixth Street, Suite 4200, Minneapolis, MN 55402; D. Timothy McVey, Esq. and McVey & Parsky LLC, 30 North LaSalle, Suite 2100, Chicago, IL 60602; Keith A. Vogt, Esq. and Stadheim & Grear Ltd., 400 North Michigan Avenue, Suite 2200, Chicago, IL 60611; Robert P. Greenspoon, Esq., William W. Flachsbart, Esq. and Flachsbart & Greenspoon, 333 North Michigan Avenue, Suite 2700, Chicago, IL 60601, counsel for plaintiff.

Alex C. Lakatos, Esq., Paul W. Hughes, Esq. and Mayer Brown LLP, 1999 K Street N.W., Washington, D.C. 20006; Charles F. Webber, Esq. and Faegre Baker Daniels, LLP, 90 South Seventh Street, Suite 2200, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court upon the motion to dismiss by defendant Associated Bank, N.A. (Associated Bank). Based upon a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion.

**BACKGROUND**

This receivership action arises out of a criminal Ponzi scheme committed using Associated Bank accounts. The scheme principals included, among others, Trevor Cook and Patrick Kiley. Cook and Kiley used several corporate entities to perpetuate their scheme.[1] The scheme purported to guarantee investors a return in excess of 10% annually through foreign currency trading with Crown Forex, S.A., a Swiss company. Compl. ¶ 3. Cook pleaded guilty and Kiley was convicted by a jury for their roles in the scheme. Id. ¶ 1. On December 11, 2009, Chief Judge Michael J. Davis appointed R.J. Zayed as the Receiver for the Receivership Entities.[2]

The Receiver alleges that in late 2007, former Associated Bank Associate Vice President Lien Sarles[3] met with Kiley at his home office in Burnsville, Minnesota. Id. ¶¶ 34-35. Shortly thereafter, Kiley opened his first account at Associated Bank: account # 5601 under the name Universal Brokerage FX Management

---

[1] These include Oxford Global Partners, LLC; Oxford Global FX, LLC; Oxford FX Growth, L.P.; Universal Brokerage FX Management, LLC; Market Shot, LLC; and other entities controlled by them (collectively, Receivership Entities). See Compl. ¶ 2.

[2] On April 4, 2013, Zayed recused himself from this matter. ECF No. 34, at 1. Chief Judge Davis authorized Tara Norgard, Brian Hayes and Russell Rigby "to act on behalf of the Receiver and in his capacity as the Receiver, with all powers appertaining thereto." Id. at 3. The court refers to these individuals collectively as the Receiver.

[3] Sarles' brother, Michael Behm, was employed by Kiley. Compl. ¶ 34.

LLC. Id. ¶ 36. The Receiver alleges that the documents for that account contained several intentional falsehoods. Id. The Receiver further alleges that the falsehoods were designed to avoid Associated Bank's duties under the Bank Secrecy Act/Anti-Money Laundering legislation. Id. ¶¶ 36-37.

The scheme principals next opened account # 1705, registered to Crown Forex LLC. Id. ¶ 33. The account was opened as a "Checking/Money Market" account rather than as an investor account. Id. ¶ 47. The Receiver alleges that, in order to avoid regulatory issues, Associated Bank advised Cook and Kiley not to open the account in the name of the foreign-domiciled Crown Forex, S.A. Id. ¶ 38. Further, the account listed Crown Forex's business address as 5413 Nicollet Avenue, Suite 14, Minneapolis, Minnesota, rather than the Burnsville home office. Id. ¶ 40. Associated Bank also inaccurately stated on account documents that "Crown Forex LLC is a Limited Liability Company recognized under the laws of Minnesota." Id. The Receiver alleges that Sarles was aware that Crown Forex LLC did not exist. Id. ¶ 45.

On June 8, 2009, the fraud principals opened Associated Bank account # 8733 under the name Basel Group LLC. Id. ¶ 61. Despite the fact that Basel Group LLC was not a registered corporation, Associated Bank indicated on account documents that it had verified the legitimacy of the LLC on a state registration website. Id. In

3

total, the Receivership Entities opened seven bank accounts with Associated Bank in 2008. Id. ¶ 29. Over $79 million was deposited into the accounts. Id. ¶ 33. The Receiver alleges that Sarles assisted investors in wiring funds into the accounts. Id. ¶ 45. During the operation of the scheme, Cook transferred millions of dollars from investor accounts into his personal accounts. Id. Sarles and Associated Bank approved these transfers. Id. ¶¶ 53-56, 60.

The Receiver alleges that Associated Bank ignored unusual patterns of transactions in the Receivership Entities' accounts and failed to report suspicious activity. Id. ¶ 48. In 2009, Associated Bank's Monitoring Department threatened to freeze account # 1705 for lack of proper documentation, but took no further action. Id. ¶ 57. Moreover, on June 25, 2009, Cook withdrew $600,000 in cash from one of the accounts. Id. ¶ 63. The Receiver also alleges that Associated Bank prepared cashier's checks that included inaccurate remitter information. Id. ¶ 64.

On April 19, 2013, the Receiver filed this action, alleging claims for aiding and abetting fraud, aiding and abetting breach of fiduciary duty, aiding and abetting conversion and aiding and abetting false representations and omissions. Associated Bank moves to dismiss.

**DISCUSSION**

**I.  Standard of Review**

To survive a motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. See Twombly, 550 U.S. at 555. "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. Iqbal, 129 S. Ct. at 1949 (citation and internal quotation marks omitted).

The court does not consider matters outside the pleadings under Rule 12(b)(6). See Fed. R. Civ. P. 12(d). The court, however, may consider matters of public record and materials that are "necessarily embraced by the pleadings." See Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (citation and internal quotation marks omitted).

5

**II. Aiding and Abetting Claims**

Where, as here, aiding and abetting claims are premised on an underlying fraud, the plaintiff "must state with particularity the circumstances constituting the fraud .... Rule 9(b)'s particularity requirement for fraud applies equally to a claim for aiding and abetting." E-Shops Corp. v. U.S. Bank Nat'l Ass'n, 678 F.3d 659, 663 (8th Cir. 2012) (citations omitted). The particularity requirement enables defendants to respond promptly and specifically to potentially damaging allegations of fraud. See Bank of Montreal v. Avalon Capital Grp., Inc., 743 F. Supp. 2d 1021, 1028 (D. Minn. 2010). The requirements of Rule 9(b) are read "in harmony with the principles of notice pleading," and the level of particularity required depends upon the nature of a case. Schaller Tel. Co. v. Golden Sky Sys., Inc., 298 F.3d 736, 746 (8th Cir. 2002) (citation and internal quotation marks omitted). However, "[c]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Id. (citation and internal quotation marks omitted). To satisfy the heightened pleading requirement, a plaintiff must set forth the "who, what, when, where, and how" of an alleged fraud. United States ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir. 2006) (citation omitted). In other words, a plaintiff must plead "the time, place and contents of false representations, as well as the identity of the person making the misrepresentation

and what was obtained or given up thereby." BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007) (citation and internal quotation marks omitted).

To state a claim for aiding and abetting under Minnesota law, a plaintiff must show (1) a primary actor committed a tort that caused injury to the plaintiff, (2) the aider and abettor knew[4] that the primary actor's conduct constituted a tort and (3) the aider and abettor substantially assisted or encouraged the primary actor in committing the tort. See Witzman v. Lehrman, Lehrman & Flom, 601 N.W.2d 179, 187 (Minn. 1999);[5] see also In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig., 113 F.3d 1484, 1495 (8th Cir. 1997). The elements of knowledge and substantial assistance are analyzed in tandem. Witzman, 601 N.W.2d at 188. That is, "where there is a minimal showing of substantial assistance, a greater showing of [knowledge] is required." Id. (citation and internal quotation marks omitted). Associated Bank argues that the Receiver has not adequately pleaded that it had knowledge of the underlying fraud or that Associated Bank provided substantial assistance or encouragement to the fraud principals.[6]

---

[4] Under Rule 9(b), knowledge "may be alleged generally." E-Shops Corp., 678 F.3d at 663 (citations omitted).

[5] Minnesota has adopted the Restatement definition of aiding and abetting. Witzman, 601 N.W.2d at 187.

[6] Associated Bank also argues that the complaint should be dismissed based on the doctrines of in pari delicto, res judicata (continued...)

7

**A. Knowledge**

"An aider and abettor's knowledge of the wrongful purpose is a crucial element in aiding or abetting cases." E-Shops Corp., 678 F.3d at 663 (citation and internal quotation marks omitted). However, "where the conduct is not a facial breach of duty, courts have been reluctant to impose liability on an alleged aider and abettor for anything less than actual knowledge that the primary tortfeasor's conduct was wrongful." Witzman, 601 N.W.2d at 188 (citations omitted). In other words, "[w]hile knowledge may be shown by circumstantial evidence, courts stress that the requirement is *actual* knowledge and the circumstantial evidence must demonstrate that the aider-and-abettor *actually knew* of the underlying wrongs committed." Varga v. U.S. Bank Nat'l Ass'n, No. 12-3180, 2013 WL 3338750, at *6 (D. Minn. July 2, 2013) (emphasis in original) (citations and internal quotation marks omitted); see also El Camino Res. Ltd. v. Huntington Nat'l Bank, 712 F.3d 917, 923 (6th Cir. 2013) (requiring, under Restatement definition of aiding and abetting, that bank must have more than "strong suspicion of wrongdoing").

Nowhere in the complaint does the Receiver allege that Associated Bank had actual knowledge of the Ponzi scheme. Rather, the Receiver alleges, among other things, that (1) Sarles met with

---

⁶(...continued)
and prudential standing. Because the complaint fails to state a claim, the court does not reach these arguments.

Kiley before the scheme participants opened accounts with Associated Bank, (2) Associated Bank advised Cook and Kiley not to open an account in the name of the foreign-domiciled Crown Forex S.A., (3) Sarles was aware that Crown Forex LLC did not exist, and (4) Associated Bank falsely stated that it verified the existence of Basel Group LLC with the state registration website. Moreover, the Receiver argues that knowledge should be inferred because Associated Bank operated the bank accounts in an atypical manner. See K & S P'ship v. Cont'l Bank, N.A., 952 F.2d 971, 977 (8th Cir. 1991) ("[I]f the method or transaction is atypical or lacks business justification, it may be possible to infer the knowledge necessary for aiding and abetting liability." (citation and internal quotation marks omitted)).

Even accepting this combination of allegations as true, however, they do not adequately plead that Associated Bank had actual knowledge of the scheme principals' fraud, breach of fiduciary duty, conversion or false representations and omissions. Rather, such allegations amount to an argument that Associated Bank should have known of the underlying fraud based on numerous red flags. See Compl. ¶ 74 ("Had Associated Bank investigated any of the numerous red flags it had before it as raised by several employees, Associated Bank would have uncovered and prevented the Ponzi scheme from flourishing."). Such a theory of liability is not viable in an aiding and abetting claim. See K & S P'ship, 952

9

F.2d at 977 ("A plaintiff's case against an aider, abetter, or conspirator may not rest on a bare inference that the defendant must have had knowledge of the facts." (citation and internal quotation marks omitted)). As a result, the complaint does not adequately plead that Associated Bank had "actual awareness of [its] role in the fraudulent scheme." Id. (citation and internal quotation marks omitted).

**B.   Substantial Assistance**

Associated Bank next argues that the Receiver has not adequately pleaded that Associated Bank rendered substantial assistance to the fraudulent scheme. To demonstrate substantial assistance, a plaintiff must "show that the secondary party proximately caused the violation, or, in other words, that the encouragement or assistance was a substantial factor in causing the tort." Id. at 979 (citation omitted); see Camp v. Dema, 948 F.2d 455, 460 (8th Cir. 1991) (applying Minnesota law). "Some affirmative step is required, because the mere presence of the particular defendant at the commission of the wrong, or his failure to object to it, is not enough to charge him with responsibility." Am. Bank of St. Paul v. TD Bank, N.A., 713 F.3d 455, 462 (8th Cir. 2013) (citation and internal quotation marks omitted) (applying Minnesota law). In other words, "[l]iability is based on [defendant's] affirmative acts, not acts it should have taken." Id. at 463.

10

"To determine what constitutes substantial assistance, courts generally consider ... the nature of the act encouraged, the amount of assistance given, the aider-and-abettor's presence or absence at the time of the tort, its relation to the primary actor, and its state of mind." Varga, 2013 WL 3338750 at *7 (citations omitted). Moreover, "the conduct in question must be undertaken with some degree of knowledge (1) of its wrongful purpose and (2) that it is aiding the tortfeasor." Id. (citations and internal quotation marks omitted).

Taking all of the allegations in the complaint as true, the Receiver has not adequately pleaded that Associated Bank substantially assisted in the fraudulent scheme. The Receiver's allegations of substantial assistance - that Associated Bank approved fraudulent transfers after ignoring red flag and suspicious activity - generally do not provide a basis for a finding of substantial assistance. See In re Agape Litig., 681 F. Supp. 2d 352, 365 (E.D.N.Y. 2010) (noting that, under Restatement definition of aiding and abetting, "[t]he caselaw is clear that opening accounts and approving transfers, even where there is a suspicion of fraudulent activity, does not amount to substantial assistance" (citation omitted)). Moreover, as already explained, the Receiver has not pleaded facts sufficient to demonstrate that Associated Bank had actual knowledge of its wrongful purpose or actual knowledge that it was aiding the scheme participants in

11

their tortious behavior. Indeed, the relationship between Associated Bank and the Receivership Entities was an arms-length, commercial relationship. See Witzman, 601 N.W.2d at 189 ("[S]ubstantial assistance means something more than the provision of routine professional services." (citations and internal quotation marks omitted)). As a result, the Receiver has failed to plead a plausible claim fo substantial assistance.

In sum, after considering the elements of knowledge and substantial assistance in tandem, the court determines that the Receiver has not pleaded a plausible claim of aiding and abetting against Associated Bank. Therefore, dismissal is warranted.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the motion to dismiss [ECF No. 15] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 30, 2013

s/David S. Doty
David S. Doty, Judge
United States District Court