```
               UNITED STATES DISTRICT COURT
                  DISTRICT OF MINNESOTA
                 Civil No. 13-232(DSD/JSM)
```

R.J. Zayed, in His Capacity
As Court-Appointed Receiver
For The Oxford Global Partners,
LLC, Universal Brokerage FX,
and Other Receiver Entities,

        Plaintiff,

v.                                                  **ORDER**

Associated Bank, N.A.,

        Defendant.

    Attorneys for plaintiff, Brian W. Hayes, Esq. at Carlson Caspers Vandenburgh Lindquist & Schuman PA, 225 South Sixth Street, Suite 4200, Minneapolis, MN 55402. D. Timothy McVey, Esq. at McVey & Parsky, LLC, 30 North LaSalle, Suite 2100, Chicago, IL 60602. Keith A. Vogt, Esq. at Stadheim & Grear LTD, 400 North Michigan Avenue, Suite 2200, Chicago, IL 60611.

    Attorneys for defendant, Alex C. Lakatos, Esq. at Mayer Brown LLP, 1999 K Street NW, Washington, DC 20006. Charles F. Webber, Esq. at Fagre Baker Daniels LLP, 90 South 7th Street, Suite 2200, Minneapolis, MN 55402.

This matter is before the court upon the motion to dismiss by defendant Associated Bank, N.A. (Associated Bank). Based on a review of the file, record, and proceedings herein, and for the following reasons, the court denies the motion.

**BACKGROUND**

The background of this matter is fully set forth in the court's September 30, 2013, order granting Associated Bank's first motion to dismiss, and the court recites only those facts necessary to resolve the instant motion. This receivership action arises out

of a Ponzi scheme committed using Associated Bank accounts. The scheme was orchestrated by, among others, Trevor Cook and Patrick Kiley. Cook and Kiley used several corporate entities[1] (the Receivership Entities) to perpetuate their scheme, which guaranteed investors lucrative returns through foreign currency trading with Crown Forex, S.A., a Swiss company. Compl. ¶ 3. Cook pleaded guilty and Kiley was convicted by a jury for their roles in the scheme. Id. ¶ 1.

In furtherance of the scheme, the Receivership Entities opened accounts with multiple financial institutions, including Associated Bank. The Receiver alleges that former Associated Bank Associate Vice President Lien Sarles was complicit in the fraud, assisted in masking the true nature of the scheme's accounts, and falsified account documents.[2] Specifically, the Receiver alleges that Sarles advised Cook and Kiley to open an account in the name of Crown Forex LLC, a domestic entity, rather than Crown Forex, S.A., to avoid regulatory issues. Id. ¶¶ 5, 38. At the time, Sarles allegedly was aware that Crown Forex LLC did not exist. Id. ¶ 45. Nonetheless, the account application, which was prepared by Associated Bank, stated that Crown Forex LLC documentation was

---

[1] These entities include Oxford Global Partners, LLC; Oxford Global FX, LLC; Oxford FX Growth, L.P.; Universal Brokerage FX Management, LLC; Market Shot, LLC; and other entities controlled by Cook and Kiley. Compl. ¶ 2.

[2] Sarles' brother, Michael Behm, was employed by Kiley and referred Kiley to Sarles. Compl. ¶ 34.

2

obtained from a "[r]eport from a state registration website." Id. ¶ 7. In addition, a separate Associated Bank form falsely stated that "Crown Forex LLC is a Limited Liability Company recognized under the laws of Minnesota." Id. ¶ 42. In total, the Receivership Entities opened at least seven accounts with Associated Bank. Id. ¶ 29.

Over the next two years, investors deposited over $79 million into the Crown Forex LLC account. Id. ¶ 33. These funds were then transferred to other accounts associated with the scheme. Id. The Receiver alleges that Sarles assisted Cook and Kiley with these illegal transfers. Specifically, Sarles allegedly approved over $3 million in transfers from the Crown Forex LLC account to Cook's personal accounts, even though he knew that the Crown Forex LLC account held client investment funds and that Cook had no signatory authority over the account. Id. ¶ 10. Sarles continued to approve these transfers even after Swiss authorities froze the Crown Forex, S.A. accounts. Id. ¶¶ 58-60. Moreover, on June 25, 2009, Cook withdrew $600,000 from one of the accounts at Associated Bank, for the alleged purpose of buying a yacht. Id. ¶ 63. Although this withdrawal was investigated by individuals at Associated Bank, it was ultimately approved. Id. The Receiver also alleges that around the same time Associated Bank prepared $3.2 million in cashier's checks that included inaccurate remitter information. Id. ¶ 64.

On November 23, 2009, the U.S. Securities and Exchange Commission brought civil actions against Cook, Kiley, and related individuals and organizations. See, e.g., U.S. Commodity Futures Trading Comm'n v. Cook, No. 09-3332 (D. Minn. filed Nov. 23, 2009). On December 11, 2009, then Chief Judge Michael J. Davis appointed R.J. Zayed as Receiver for the Receivership Entities. Id. ECF 96.[3] The Receiver was given authority to "[i]nitiate, defend, compromise, adjust, intervene in, dispose of, or become a party to any actions or proceedings ... necessary to preserve or increase the assets of the [Receivership Entities] or to carry out his or her duties pursuant to this Order." Id. at 4. The Receiver was further authorized "[t]o pursue, resist and defend all suits, actions, claims and demands which may ... be brought by or asserted against the [Receivership Entities]." U.S. Sec. & Exch. Comm'n v. Cook, No. 09-3333 (D. Minn. filed Nov. 23, 2009), ECF No. 13, at 3.

On April 29, 2013, the Receiver filed suit, alleging claims for aiding and abetting fraud, breach of fiduciary duty, conversion, and false representations and omissions. The court dismissed the action on September 30, 2013, for failure to adequately plead knowledge or substantial assistance on the part of

---

[3] On April 4, 2013, Zayed recused himself from this matter. ECF No. 34, at 1. Chief Judge Davis authorized Tara Norgard, Brian Hayes, and Russell Rigby "to act on behalf of the Receiver an in his capacity as the Receiver, with all powers appertaining thereto." Id. at 3. The court refers to these individuals collectively as the Receiver.

4

Associated Bank. ECF No. 50. The Eighth Circuit reversed and remanded. Zayed v. Associated Bank, N.A., 779 F.3d 727 (8th Cir. 2015). Associated Bank again moves to dismiss.

**DISCUSSION**

**I. Standard of Review**

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. Twombly, 550 U.S. at 555. "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).

The court does not consider matters outside of the pleadings under Rule 12(b)(6). Fed. R. Civ. P. 12(d). The court, however, may consider matters of public record and materials that do not

5

contradict the complaint, as well as materials that are "necessarily embraced by the pleadings." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (citation and internal quotation marks omitted).

## II. In Pari Delicto

Associated Bank first argues that this action is barred by the doctrine of in pari delicto. "The doctrine of in pari delicto is the principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." Grassmueck v. Am. Shorthorn Assoc., 402 F.3d 833, 837 (8th Cir. 2005) (citation and internal quotation marks omitted). It is an equitable defense that "is based upon judicial reluctance to intervene in disputes between [wrongdoing] parties." Christians v. Grant Thornton, LLP, 733 N.W.2d 803, 814 (Minn. Ct. App. 2007) (citation and internal quotation marks omitted). Judicial intervention may be warranted, however, if a "paramount public interest" supports "the enforcement of a public policy which overrides considerations of a benefit inuring to the wrongdoer." Head v. AAMCO Automatic Transmissions, Inc., 199 N.W.2d 444, 448 (Minn. 1972).

Associated Bank argues that it and the Receivership Entities are at least equally culpable for their participation in the Ponzi scheme, and as a result, in pari delicto prevents the Receiver from bringing this action on the entities' behalf. Under Minnesota law,

6

a receiver typically has the same rights and is subject to the same defenses as the entity that the receiver represents. See Magnusson v. Am. Allied Ins. Co., 189 N.W.2d 28, 33 (Minn. 1971). When an equity receiver is appointed for a corporation, however, "the wrongdoer (the corporation) is removed from the picture and, hence, in pari delicto does not apply." Kelley v. College of St. Benedict, 901 F. Supp. 2d 1123, 1129 (D. Minn. 2012); see also Scholes v. Lehmann, 56 F.3d 750, 754 (7th Cir. 1995) ("[T]he defense of in pari delicto loses its sting when the person who is in pari delicto is eliminated."). Indeed, an equity receiver is permitted to bring claims that would otherwise "be barred by a corporation's own fraud had the corporation brought the claims on its own behalf." Kelley, 901 F. Supp. 2d at 1129.

Moreover, the Receiver was granted authority to "pursue, resist and defend all suits, actions, claims and demands which may ... be brought by or asserted against the [Receivership Entities]." U.S. Sec. & Exch. Comm'n v. Cook, No. 09-3333 (D. Minn. filed Nov. 23, 2009), ECF No. 13, at 3; see also Equity Trust Co. v. Cole, 766 N.W.2d 334, 341 (Minn. 2009) ("[T]he purpose and scope of a receivership is defined by court order."). "Because this case involves a Ponzi scheme, the Receivership Entities are considered victims of the fraud and thus creditors of the Ponzi scheme." Zayed v. Peregrine Fin. Grp., Inc., No. 12-269, 2012 WL 2373423, at *2 (D. Minn. June 22, 2012); see also German-Am. Fin. Corp. v.

7

Merchs. & Mfrs. State Bank of Minneapolis, 225 N.W. 891, 893 (Minn. 1929) (stating that a receiver for an insolvent corporation may sue for the benefit of its creditors "even though the defense set up might be valid as against the corporation itself"). Thus, it would defeat one of the purposes for which the Receiver was appointed to bar this action based on in pari delicto. See Jones v. Wells Fargo Bank, N.A., 666 F.3d 955, 966 (5th Cir. 2012) (declining to apply in pari delicto where doing so "would undermine one of the primary purposes of the receivership established ... and would thus be inconsistent with the purposes of the doctrine").

Associated Bank argues that courts routinely apply in pari delicto to bar actions where, as alleged here, the receiver asserts "a claim for tort damages from entities that derived no benefit from the embezzlements, but that were allegedly partly to blame for their occurrence." Knauer v. Jonathon Roberts Fin. Grp., Inc., 348 F.3d 230, 236 (7th Cir. 2003); see also Christians, 733 N.W.2d at 815 ("[W]hen a defendant's only sin is its failure to prevent transgressions by the plaintiff, no benefit flows to the public from rewarding the transgressor." (citation and internal quotation marks omitted)). At this stage in the proceedings, however, the court cannot determine the extent to which Associated Bank participated in and benefitted from the Ponzi scheme. See Pearlman v. Alexis, No. 09-20865, 2009 WL 3161830, at *3 (S.D. Fla. Sept. 25, 2009) (declining to apply in pari delicto on motion to dismiss

8

because doing so required "an essentially equitable and necessarily factbound apportionment of responsibility"); Marwil v. Ent & Imler CPA Grp., PC, No. 03-678, 2004 WL 2750255, at *10 (S.D. Ind. Nov. 24, 2004) (declining to apply in pari delicto at the pleading stage, where receiver alleged that defendant "recklessly ignor[ed] and perpetuat[ed]" the fraudulent misrepresentations of the receiver entity). Likewise, the court cannot determine at this time whether the conduct of Cook and Kiley should be imputed to the Receivership Entities for purposes of the in pari delicto defense. See Grassmueck, 402 F.3d at 841 (applying in pari delicto where partnership was alter ego of general partner). The appointment of the Receiver and the Receiver's allegations regarding Associated Bank's participation in the scheme, though relevant considerations for purposes of the in pari delicto doctrine, are not yet dispositive. As a result, dismissal on the basis of in pari delicto is not warranted at this time.

**III. Res Judicata**

Associated Bank next argues that this action is barred by res judicata. In October 2009, six defrauded investors sued Associated Bank in Wisconsin state court for the bank's alleged participation in the Ponzi scheme. See Grad v. Assoc. Bank, N.A., 801 N.W.2d 349, 2011 WL 2184335, at *1 (Wis. Ct. App. June 7, 2011). The investors argued – based on similar facts as those alleged in the instant action – that Associated Bank negligently failed to

9

discover and prevent fraudulent conduct by Oxford Global Partners, LLC, a Receivership Entity, and that the bank aided and abetted Oxford's breach of its fiduciary duties and conversion of property. Id. The district court dismissed the complaint and the Wisconsin Court of Appeals affirmed, finding in part that the investors "did not allege that Associated intended to assist the customer's tortious conduct - a necessary element of aiding and abetting liability." Id. at *1. Associated Bank argues that Grad precludes the Receiver's claims here.

When determining the preclusive effect of a state court's judgment on subsequent claims, federal courts sitting in diversity refer to the law of the state "from which the judgment is taken." Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 373 (1996) (citation and internal quotation marks omitted). Under Wisconsin law, "a final judgment is conclusive in all subsequent actions between the same parties [or their privies] as to all matters which were litigated or which might have been litigated in the former proceedings." N. States Power Co. v. Bugher, 525 N.W.2d 723, 727 (Wis. 1995) (citation and internal quotation marks omitted). In order for a subsequent claim to be res judicata, there must be "(1) an identity between the parties or their privies in the prior and present suits; (2) an identity between the causes of action in the two suits; and, (3) a final judgment on the merits in a court of competent jurisdiction." Id. at 728.

10

Associated Bank argues that the Receiver stands in privity with the Grad plaintiffs. The court disagrees. "Privity exists when a person is so identified in interest with a party to former litigation that he or she represents precisely the same legal right in respect to the subject matter involved." Pasko v. City of Milwaukee, 643 N.W.2d 72, 78 (Wis. 2002). The interests and legal rights pursued by the Receiver here are different than those at issue in Grad, however. In Grad, the plaintiff investors were seeking recovery on their own behalf. In contrast, the Receiver "represents the interest of the compan[ies] in receivership." Feinstein v. Long, Nos. 11-57, 11-58, 2011 WL 3555727, at *4 (E.D. Wis. Aug. 11, 2011). Thus, the Receiver is pursuing this action to redress injury to the Receivership Entities, even though doing so will necessarily benefit the individual investors. See Compl. ¶¶ 83, 88, 94, 98; Wuliger v. Mfrs. Life Ins. Co., 567 F.3d 787, 795 (6th Cir. 2009) (stating that the purpose of a receiver is to "marshal the receivership entities' assets ... so that the assets may be distributed to the injured parties in a manner the court deems equitable"). This difference in interests is sufficient to preclude a finding of privity. See Pasko, 643 N.W.2d at 79-80 (finding the interests of police officers in seeking promotions differed from their union's interest in ensuring promotions for all of its members); Treter v. Valona, 706 N.W.2d 703, 2005 WL 2649123, at *7 (Wis. Ct. App. Oct. 18, 2005) (finding tenant's interest in

11

reacquiring conveyed property on behalf of corporation differed from the interests of the corporation's creditors, who also sought to void the conveyance). As a result, dismissal is not warranted on the basis of res judicata.

**IV. Standing**

Associated Bank lastly argues that the Receiver lacks prudential standing to pursue this action. Prudential standing requires that a plaintiff claim an injury to its own legal rights and interests rather than the legal rights or interests of third parties. See Allen v. Wright, 468 U.S. 737, 751 (1984), abrogated on other grounds by Lexmark Int'l, Inc. V. Static Control Components, Inc., 134 S. Ct. 1377 (2014). It provides "assurance that the most effective advocate of the rights at issue is present to champion them." Duke Power Co. v. Carolina Envtl. Study Grp., Inc., 438 U.S. 59, 80 (1978).

Associated Bank argues that the claims asserted by the Receiver should instead be pursued by the defrauded investors. Specifically, Associated Bank argues that this action will likely have preclusive effect on subsequent claims brought by investors, thereby violating the "deep-rooted historic tradition that everyone should have his own day in court." Richards v. Jefferson Cnty., 517 U.S. 793, 798 (1996) (citation and internal quotation marks omitted). The court is unaware of any case dismissing a receiver's claims on behalf of a receivership entity on prudential standing

12

grounds.  In contrast, courts routinely hold that receivers have standing to assert claims on behalf of a receivership entity even though the receiver is acting for the benefit of individual investors.  See, e.g., Marion v. TDI Inc., 591 F.3d 137, 147-49 (3d Cir. 2010); Scholes, 56 F.3d at 753-54; see also Zayed v. Buysse, No. 11-1042, 2011 WL 2160276, at *4-5 (D. Minn. June 1, 2011) (finding the Receiver in the instant action had standing to pursue fraudulent transfer and unjust enrichment claims, despite argument that such claims are best pursued by Cook's individual creditors). Indeed, as stated previously, the Receiver was granted authority to pursue claims such as this on behalf of the Receivership Entities and for the benefit of investors.  As a result, the Receiver has prudential standing to pursue this action.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the motion to dismiss [ECF No. 70] is denied.

Dated:  August 4,2015

    s/David S. Doty
    David S. Doty, Judge
    United States District Court